1  Douglas Kruschen
2  P.O. Box 465
   MSC: 53818
3  Agoura Hills, CA 91376
   7788512315
4  *(Plaintiff Pro Se)*



FILED
CLERK, U.S. DISTRICT COURT
04/24/2025
CENTRAL DISTRICT OF CALIFORNIA
BY _____ GSA _____ DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| DOUGLAS KRUSCHEN, an individual, <br><br> *Plaintiff* <br><br> v. <br><br> VICTOR RENE MARTINEZ, an individual; NORBERTO MARTINEZ, an individual; STEVEN RICHARD GITTLEMAN, an individual; KERRIE DOLAN, an individual; ANNANDALE TOWNHOUSE ASSOCIATION, INC., a California corporation; and DOES 1 through 10, inclusive, <br><br> *Defendants* | Case No.: 2:25-cv-02883-FLA-(JPRx) <br><br> Assigned to: Hon. Fernando L. Aenlle-Rocha <br> *United States District Judge* <br> Referred to: Hon. Jean P. Rosenbluth <br> *United States Magistrate Judge* <br><br> **VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL; VERIFICATION; INDEX OF EXHIBITS** |

COMES NOW Plaintiff DOUGLAS KRUSCHEN, an individual, and for causes of action against Defendants, alleges as follows:

### INTRODUCTION AND PRELIMINARY STATEMENT

1.    Plaintiff DOUGLAS KRUSCHEN brings this federal civil rights action under the federal Fair Housing Act and related California statutes. As a qualified individual with a disability, Plaintiff has been subjected to a sustained campaign of

harassment, discrimination, and retaliation by neighboring residents and agents of his homeowners' association. Despite repeated notice, Defendant ANNANDALE TOWNHOUSE ASSOCIATION, INC., and its agents failed to take meaningful corrective action. Plaintiff now seeks damages and equitable relief for violations of federal and state fair housing laws, as well as related common law claims arising from Defendants' failure to protect his rights and ensure a habitable, nondiscriminatory housing environment.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as Plaintiff asserts claims arising under the Fair Housing Act, 42 U.S.C. § 3601 et seq. Supplemental jurisdiction exists over related state law claims pursuant to 28 U.S.C. § 1367(a), as they derive from a common nucleus of operative fact.[1] Jurisdiction also exists under 28 U.S.C. § 1343(a)(4), which confers jurisdiction for actions to redress the deprivation of rights secured by federal law under color of state or private authority.

3.    Venue is proper in this District under 28 U.S.C. § 1391(b), as the events giving rise to the claims occurred in this District and all named Defendants reside in California.

## PARTIES

4.    Plaintiff DOUGLAS KRUSCHEN is an individual with one or more recognized disabilities and a resident of Agoura Hills, California. He is the owner of residential real property within the Annandale Townhouse Association ("Association" or "HOA") with appurtenant membership therein. At some times relevant he has performed as an employee or agent of the HOA.

---

[1] Claims for hostile environment harassment and retaliation are actionable under the Fair Housing Act, and confer federal question jurisdiction under 28 U.S.C. § 1331. See *Morris v. W. Hayden Estates First Addition Homeowners Ass'n, Inc.*, 104 F.4th 1128 (9th Cir. 2024); *Bloch v. Frischholz*, 533 F.3d 562 (7th Cir. 2008).

VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL

5.    Defendant VICTOR RENE MARTINEZ ("V. MARTINEZ") is an individual resident and co-owner of deed restricted real property (28566 Conejo View Drive) within the HOA. At all times relevant he was a member of the HOA. At some times relevant he has performed as an employee or agent of the HOA.

6.    Defendant NORBERTO MARTINEZ is trustee of a trust that co-holds title to the deed restricted property occupied by V. MARTINEZ and is therefore jointly responsible under the HOA's governing documents.

7.    Defendant STEVEN RICHARD GITTLEMAN ("GITTLEMAN") is an individual resident of, and a co-trustee of a trust that holds title to, deed restricted real property (28555 Conejo View Drive) within the HOA. At all times relevant he was a member of the HOA. At some times relevant he has performed as an employee or agent of the HOA.

8.    Upon information and belief, Defendant KERRIE DOLAN is a resident of and co-trustee of the same trust that holds title to the same deed restricted property as GITTLEMAN and is therefore jointly responsible under the Association's governing documents.

9.    Defendant ANNANDALE TOWNHOUSE ASSOCIATION, INC. is a California nonprofit mutual benefit corporation and common interest development governing the community in which Plaintiff and other Defendants are members and reside. The Association has failed to address harassment or enforce community standards despite having knowledge of the conduct. At all times relevant, the Association operated as a housing provider within the meaning of state and federal fair employment and housing laws, exercising control over the management, use, and enforcement of housing rules, policies, and services within the community.

10.    Plaintiff is informed and believes that DOES 1 through 10 are individuals or entities who were involved in or are legally responsible for the conduct alleged herein. Their true names and capacities are unknown to Plaintiff at this time, but Plaintiff

VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL

will seek to amend this Complaint to insert their identities when ascertained through discovery.

### PRIOR LITIGATION HISTORY AND NOTICE OF PATTERN

11.    Courts have long recognized that a defendant's prior litigation history is relevant to notice, intent, and retaliatory motive. See *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001) (municipality's failure to act despite ongoing complaints supported inference of deliberate indifference).

12.    Plaintiff has previously initiated multiple civil actions against the Annandale Townhouse Association and certain individual Defendants such as GITTLEMAN and V. MARTINEZ to enforce statutory rights and ensure compliance with governing documents. These include:

- *Kruschen v. Annandale Townhouse Ass'n* (LASC Case No. 19VECP00459), resulting in a court-ordered reduction of election quorum thresholds under Corp. Code § 7515;

- *Kruschen v. Gittleman* (LASC Case No. 20STLC07815), resulting in a defamation judgment in Plaintiff's favor;

- *Kruschen v. Annandale Townhouse Ass'n, et al.* (LASC Case No. 23VECP00088), seeking the removal of Defendant Gittleman from the Board of Directors for abuse of authority under Corp. Code § 7616;

- *Kruschen v. Annandale Townhouse Ass'n, et al.* (LASC Case No. 23VECV05191), in which Plaintiff secured a three-day bench trial judgment invalidating the 2023 HOA election due to statuatory violations, along with an attorney's fees and costs exceeding $60,000; and

- *Kruschen v. Annandale Townhouse Ass'n, et al.* (LASC Case No. 24STLC07774), currently pending, concerning broad governance

VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL

violations, private nuisance, and negligence, with jury trial expected in 2026.

- *Kruschen v. Annandale Townhouse Ass'n, et al.* (LASC Case No. 25STLC01381), currently pending, seeking the invalidity of the 2024 HOA election due to statutory violations.

13.    These proceedings have placed Defendants on actual notice of Plaintiff's rights and their legal obligations. Despite multiple successful legal actions against the HOA and its members, Defendants continued and escalated conduct that is now the subject of this action.

## FACTUAL ALLEGATIONS

14.    Plaintiff is a qualified individual with a disability that substantially limits one or more major life activities. At all relevant times, Defendants were aware of Plaintiff's protected status under federal and state fair housing laws.

15.    Plaintiff knowingly, intentionally, and with full understanding of the legal obligations governing common interest developments, acquired title to deed-restricted residential property within the HOA. Plaintiff specifically chose to invest and reside in this community in reliance on the legal protections afforded under the Fair Housing Act (42 U.S.C. § 3601 et seq.), the California Fair Employment and Housing Act (Gov. Code § 12955 et seq.), and related statutes that prohibit housing discrimination, require reasonable accommodation, and impose duties of fair governance. Plaintiff pays approximately $500 per month in assessments for the privilege of residing in this regulated environment, with the reasonable expectation that HOA governance would be carried out in a manner consistent with these protections. The acts and omissions described herein violated those expectations and Plaintiff's statutory rights.

16.    On March 14, 2023, Defendant STEVEN GITTLEMAN, motivated by hostility toward Plaintiff's protected class status, circulated an email to third parties—including neighbors, non-HOA residents, and vendors—soliciting defamatory online

VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL

reviews to force Plaintiff from the community. This act of retaliation from a resident, member, and agent of the HOA, interfered with Plaintiff's use and enjoyment of his home, in violation of 42 U.S.C. § 3617. **(Exhibit A).**

17.     On April 18, 2023, V. MARTINEZ verbally assaulted Plaintiff in a shared HOA common area, yelling that he is "a disabled prick" (quoted verbatim, language used is offensive and included for evidentiary purposes), and questioned Plaintiff's disability status. The incident was witnessed by the HOA's Managing Agent and others. This constitutes disability-based harassment under § 3604(f)(2) and triggered Plaintiff's formal complaint with the California Civil Rights Department ("CRD"), which issued a Notice of Complaint ("Notice") to the HOA in September 2023. A prior cease-and-desist letter to V. Martinez demonstrates both the Association's and V. MARTINEZ's prior awareness of prohibited conduct. **(Exhibit B).**

18.     The CRD is the administrative agency charged with enforcing the California Fair Employment and Housing Act (FEHA), and its issuance of a Right-to-Sue Notice confirms exhaustion of administrative remedies under Gov. Code § 12965(b).

19.     On June 20, 2023, an HOA agent publicly identified Plaintiff as disabled in response to a resident's inquiry about Plaintiff's parked vehicle with a handicapped parking placard. This unauthorized disclosure of protected information, made in a public setting, further contributed to the hostile housing environment.

20.     On or about September 29, 2023, GITTLEMAN disseminated the confidential CRD Notice via email to multiple individuals, including non-HOA residents and third-party vendors, in retaliation for Plaintiff's protected activity. The HOA had previously admonished GITTLEMAN in writing on two occasions **(see Exhibits C and D)** for his similar misconduct but failed to act in response to this breach. Under § 3617, such retaliation is actionable.

VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL

21.    On October 3, 2023, V. MARTINEZ made further public statements ridiculing Plaintiff's CRD complaint and disability in the presence of Plaintiff and the HOA's agents and members. These repeated actions continued to degrade the housing environment.

22.    On October 16, 2023, GITTLEMAN again disseminated the confidential CRD Notice via email and made further public statements mocking Plaintiff's CRD complaint. GITTLEMAN referred to the matter as a "ridiculous, fake ADA lawsuit." The HOA was aware of its resident's, member's, and agent's actions, but took no remedial action. These repeated actions continued to degrade the housing environment

23.    Upon information and belief, between November 2023 and June 2024, both GITTLEMAN and V. MARTINEZ continued to use discriminatory language as residents, members, and agents of the HOA, when discussing Plaintiff with others.

24.    On June 14, 2024, V. MARTINEZ, a resident, member, and agent of the HOA, while appearing intoxicated, shouted at Plaintiff, "Trump is going to deal with shithead retards like you when he wins" (quoted verbatim, language used is offensive and included for evidentiary purposes), while pointing at a large cutout of Donald Trump displayed at his property. **(Exhibit E).** This incident escalated the level of hostility in a shared residential area.

25.    On December 7, 2024, V. MARTINEZ, a resident, member, and agent of the HOA, directed an obscene American Sign Language gesture in Plaintiff's direction as captured on video. **(Exhibit F).** This incident further escalated the level of hostility in a shared residential area and further contributed to Plaintiff's distress and constituted a continuation of retaliatory conduct under § 3617.

26.    Defendant NORBERTO MARTINEZ is jointly responsible under the HOA's Covenants, Conditions & Restrictions ("CC&Rs") for the conduct of V. MARTINEZ and as his father, past employer, and co-owner of shared real property, was aware of his repeated misconduct. Similarly, Defendant KERRIE DOLAN shares

VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL

responsibility for GITTLEMAN's actions and as his wife, upon information and belief, was aware of his prior conduct.

27.    Despite receiving multiple written and verbal complaints, the HOA failed to impose discipline or take meaningful corrective action. This pattern of abuse, inaction, and retaliation created a hostile environment that caused Plaintiff emotional distress, humiliation, and loss of peaceful enjoyment of his home.

28.    Pursuant to 24 C.F.R. § 100.7(a)(1)(iii), a housing provider is directly liable under the Fair Housing Act for failing to take prompt action to correct and end a discriminatory housing practice by a third party, where the provider knew or should have known of the conduct and had the power to correct it. The HOA, as a governing body with authority to impose discipline, enforce CC&Rs, and regulate conduct within the community, had both actual knowledge of the conduct and the means to address it, yet failed to act. This failure constitutes direct liability under the Fair Housing Act and further supports Plaintiff's claim of a hostile housing environment.

29.    Similarly, under 2 Cal. Code Regs. § 12176(b), a housing provider may be held liable under the California Fair Employment and Housing Act for "failing to take prompt action to correct and end a discriminatory housing practice by a third party, where the provider knew or should have known of the conduct and had the authority to correct it." Defendant HOA had both actual and constructive notice of the ongoing disability-based harassment by its members and agents but failed to take any meaningful corrective action. This inaction gives rise to direct liability under FEHA, as well as under federal law.

30.    The CC&Rs (Article VIII, Section 8.15) hold owners accountable for the conduct of occupants and guests. Accordingly, both NORBERTO MARTINEZ and DOLAN are liable under the HOA's governing documents.

31.    Plaintiff received a Right-to-Sue notice from CRD for the April 2023 incident. **(Exhibit G)**. On August 26, 2024, Plaintiff filed an additional CRD complaint

VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL

covering conduct through August 25, 2024, thereby tolling applicable statutes of limitation under *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88 (2008). On March 25, 2025, Plaintiff voluntarily withdrew that CRD complaint in anticipation of this civil action.

## AFFIRMATIVE ALLEGATION REGARDING ANTI-SLAPP INAPPLICABILITY

32.    To the extent any Defendant contends that statements or disclosures were protected activity under California's Anti-SLAPP statute (Code Civ. Proc. § 425.16), such argument is inapplicable. The gravamen of Plaintiff's claims is not constitutionally protected expression but rather intentional, retaliatory, and discriminatory conduct—often occurring in common areas of shared housing—and involving breaches of privacy, hostile environment harassment, and violations of civil rights statutes. As held in *Flatley v. Mauro*, 39 Cal. 4th 299 (2006), unlawful conduct is not protected by the Anti-SLAPP statute. Similarly, *City of Montebello v. Vasquez*, 1 Cal. 5th 409, 423 (2016), reaffirmed that the statute does not protect discriminatory or retaliatory acts. Plaintiff expressly alleges that Defendants' conduct fell outside the ambit of constitutionally protected activity and that no privilege or defense under Code of Civil Procedure § 425.16 applies.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (Violation of the Fair Housing Act – 42 U.S.C. § 3601 et seq.)

### Against all Defendants

33.    Plaintiff realleges and incorporates all prior paragraphs.

34.    Defendants engaged in a pattern of discriminatory and retaliatory conduct based on Plaintiff's disability, including verbal harassment, public ridicule, intimidation, and unauthorized disclosure of protected complaints. These acts interfered with Plaintiff's use and enjoyment of his home in violation of 42 U.S.C. § 3604(f), and

VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL

constituted retaliation under 42 U.S.C. § 3617 for Plaintiff's exercise of fair housing rights, including filing a CRD complaint.

35.     Defendant GITTLEMAN's dissemination of the confidential CRD Notice was a direct act of retaliation. The HOA's failure to take any remedial action despite prior notice emboldened repeated misconduct and exacerbated the harm. This type of disclosure is comparable to the conduct found actionable in *Fowler v. Wells Fargo Bank*, 2021 WL 633868 (C.D. Cal. Feb. 17, 2021), where dissemination of private disability-related information supported claims of unlawful retaliation and privacy breach.

36.     Despite the HOA's knowledge of GITTLEMAN's propensity to break the law, the HOA provided the confidential CRD Notice to GITTLEMAN with reckless disregard for the foreseeable consequences.

37.     This sustained campaign of hostility created a discriminatory housing environment, actionable under federal law. See *Morris v. W. Hayden Estates*, 104 F.4th 1128 (9th Cir. 2024); *Bloch v. Frischholz*, 533 F.3d 562 (7th Cir. 2008). Similar liability was upheld in *Weinreb v. Glendale*, 590 F. App'x 663 (9th Cir. 2015 - Unpublished) (failure to act on disability-based harassment), and *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690 (9th Cir. 2009) (municipal inaction). See also *Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001) (municipal liability for failure to respond to known harassment), and *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079 (E.D. Cal. 2012) (recognizing housing-based retaliation and harassment claims under the FHA). See also *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996) (affirming that housing provider liability can arise from failure to respond to harassment by one resident against another)

38.     Additionally, the HOA is directly liable under HUD regulation 24 C.F.R. § 100.7(a)(1)(iii) for its failure to act on known, ongoing discriminatory conduct. As a housing provider with control over enforcement mechanisms and resident behavior, its refusal to address third-party harassment by its members and agents constitutes a

discriminatory housing practice under this regulation and supports liability under 42 U.S.C. §§ 3604(f) and 3617.

39.     This theory of liability is further reinforced by analogous California law, including 2 Cal. Code Regs. § 12176(b), which imposes identical obligations on housing providers under FEHA.

40.     Defendants' inaction also violated their duty to accommodate under *Howard v. HMK Holdings, LLC*, 988 F.3d 1185 (9th Cir. 2021), and caused disparate harm as described in *Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015).

41.     Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's federally protected rights. Plaintiff seeks actual damages, punitive damages, injunctive relief, and attorney's fees and costs pursuant to 42 U.S.C. § 3613.

42.     Plaintiff further reserves the right to seek attorney's fees pursuant to 42 U.S.C. § 1988 to the extent any claim arises under 42 U.S.C. § 1983 or other federal civil rights provisions authorizing such relief.

## SECOND CAUSE OF ACTION

### (Violation of the California Fair Employment and Housing Act – Gov. Code § 12955 et seq.)

### Against all Defendants

43.     Plaintiff realleges and incorporates all prior paragraphs.

44.     Defendants violated the California Fair Employment and Housing Act ("FEHA") through a sustained pattern of disability-based harassment, retaliation, and failure to accommodate. These acts contravene Government Code § 12955(b), (d), (f), and (m).

45.     The conduct included:

- Verbal and written harassment by Defendants V. MARTINEZ and GITTLEMAN

- Public ridicule and mockery of Plaintiff's CRD complaint
- Repeated dissemination of confidential CRD materials
- The HOA's refusal to intervene, enforce rules, or modify policies to protect Plaintiff

46.     As a housing provider within the meaning of Gov. Code § 12927(d)-(e), the HOA had a statutory duty to take prompt action to prevent and correct discriminatory conduct by its members and agents. See 2 Cal. Code Regs. § 12176.

47.     The HOA's failure to act also constitutes a denial of reasonable accommodation under § 12955(m) and § 12927(c)(1), as well as a breach of its affirmative duty under Gov. Code § 12940(k) and 2 Cal. Code Regs. § 11023 to implement anti-harassment policies and provide appropriate training.

48.     Defendants' conduct also constitutes a violation of 2 Cal. Code Regs. § 12176(b), which holds housing providers liable for failing to address discriminatory housing practices committed by third parties within their control. The HOA, as the governing entity, had the authority and obligation to intervene and failed to act despite ongoing notice. This failure supports liability under Gov. Code § 12955 and related FEHA provisions.

49.     Liability is further supported by *Brown v. Smith*, 55 Cal. App. 5th 303 (2020) (harassment independently actionable under FEHA), and *Auburn Woods I Homeowners Ass'n v. FEHC*, 121 Cal. App. 4th 1578 (2004) (HOA liable for failure to accommodate).

50.     The California Civil Rights Department (CRD), the agency charged with enforcing the Fair Employment and Housing Act (FEHA), has consistently found housing providers liable under Government Code § 12955 and 2 Cal. Code Regs. § 12176(b) when they fail to act in response to known disability-based harassment occurring within residential communities.

VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL

51.     These administrative decisions confirm that the conduct alleged herein is well within the scope of unlawful housing discrimination under California law, and that Plaintiff's statutory rights under FEHA have been violated.

52.     Defendants acted with oppression, fraud, or malice under Cal. Civ. Code § 3294. Plaintiff seeks compensatory and punitive damages, injunctive relief, and statutory attorneys' fees under Gov. Code § 12989.2 and Cal. Civ. Code § 52.

### THIRD CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

### Against all Defendants

53.     Plaintiff realleges and incorporates all prior paragraphs.

54.     Defendants knowingly engaged in extreme and outrageous conduct by repeatedly harassing and retaliating against Plaintiff because of his disability. This included verbal abuse, public ridicule, and hostile behavior in shared living spaces, despite knowing Plaintiff's vulnerable status.

55.     Defendants intended to cause, or acted with reckless disregard for the probability of causing, Plaintiff severe emotional distress.

56.     As a direct and proximate result, Plaintiff suffered anxiety, humiliation, and emotional pain. Defendants are jointly and severally liable for all damages resulting from their conduct.

### FOURTH CAUSE OF ACTION

### (Private Nuisance – Cal. Civ. Code §§ 3479–3481)

### Against all Defendants

57.     Plaintiff realleges and incorporates all prior paragraphs.

58.     Defendants' conduct—including repeated discriminatory and retaliatory acts in common areas—substantially and unreasonably interfered with Plaintiff's quiet enjoyment of his home, creating a hostile living environment.

59.     This ongoing interference constitutes a private nuisance under Civil Code § 3479, as it diminished Plaintiff's comfort, privacy, and emotional well-being in his residence.

60.     As a result, Plaintiff suffered emotional distress, fear, and a loss of peaceful use of his property.

### FIFTH CAUSE OF ACTION

### (Declaratory and Injunctive Relief)

### Against all Defendants

61.     Plaintiff realleges and incorporates all prior paragraphs.

62.     A present and actual controversy exists between the parties as to whether the conduct described herein violated Plaintiff's rights under federal and state fair housing laws.

63.     Plaintiff seeks a judicial declaration that Defendants' actions constituted unlawful discrimination, retaliation, and nuisance. Plaintiff further seeks a permanent injunction:

- Prohibiting Defendants from engaging in further discriminatory or retaliatory conduct
- Requiring compliance with federal and state fair housing laws

### SIXTH CAUSE OF ACTION

### (Violation of the Unruh Civil Rights Act – Cal. Civ. Code § 51 et seq.)

### Against all Defendants

64.     Plaintiff realleges and incorporates all prior paragraphs.

65.     Defendants, including the HOA and its agents, operated and controlled common areas and services of a residential community open to residents and guests. As such, they are "business establishments" within the meaning of Civil Code § 51.

VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL

66.    By subjecting Plaintiff to disability-based harassment, retaliation, and public ridicule, and by failing to take corrective action, Defendants denied Plaintiff full and equal access to housing-related privileges in violation of § 51(b).

67.    The HOA's failure to address such misconduct in shared spaces—combined with its governance and enforcement functions—places it squarely within the scope of the Unruh Act. See *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824 (2005); *Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594 (1995).

68.    Disability discrimination is actionable under the Unruh Civil Rights Act even where no specific commercial transaction is involved. See *Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 1047–48 (N.D. Cal. 2012) (holding public entities accountable for disability-based discrimination under Unruh Act).

69.    Defendants acted with oppression, fraud, or malice. Plaintiff seeks actual and statutory damages under Civil Code § 52(a), attorneys' fees, and punitive damages under § 3294.

## SEVENTH CAUSE OF ACTION
### (Negligence / Negligent Supervision)
### Against Annandale

70.    Plaintiff realleges and incorporates all prior paragraphs.

71.    The HOA owed Plaintiff a duty of care as a resident and member to enforce governing documents and protect against foreseeable harm by its members, agents, or occupants. See *Frances T. v. Village Green Owners Assn.*, 42 Cal. 3d 490 (1986).

72.    Despite actual notice of repeated misconduct by GITTLEMAN and V. MARTINEZ, the HOA failed to investigate, discipline, or prevent further harm. This inaction constitutes negligence and negligent supervision.

73.    As a direct result, Plaintiff suffered emotional distress and loss of peaceful enjoyment of his home.

## EIGHTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

### Against Annandale, V. Martinez, Gittleman, and DOE Agents

74.    Plaintiff realleges and incorporates all prior paragraphs.

75.    As a homeowners' association, the HOA and its agents owed fiduciary duties to Plaintiff, including duties of care, good faith, and loyalty. See *Lamden v. La Jolla Shores Clubdominium Homeowners Assn.*, 21 Cal. 4th 249 (1999).

76.    As a nonprofit mutual benefit corporation, the HOA and its directors and officers are subject to the fiduciary duties and standard of care set forth in Cal. Corp. Code § 7231.

77.    The HOA failed to act despite notice of discriminatory and retaliatory conduct, and failed to implement any anti-discrimination or anti-harassment policies, in violation of its statutory obligations under Gov. Code § 12940(k) and 2 Cal. Code Regs. § 11023.

78.    This sustained inaction and disregard for Plaintiff's rights constitutes a breach of fiduciary duty. See *Frances T.*, 42 Cal. 3d at 512–13.

79.    Plaintiff seeks compensatory damages and equitable relief.

## NINTH CAUSE OF ACTION

### (Invasion of Privacy – Public Disclosure of Private Facts)

### Against Annandale, Steven Richard Gittleman, Kerrie Dolan, and DOE Agents

80.    Plaintiff realleges and incorporates all prior paragraphs.

81.    Following Plaintiff's CRD complaint, Defendant GITTLEMAN repeatedly disseminated the confidential CRD Notice to residents, vendors, and unrelated third parties. These disclosures revealed private and sensitive details about Plaintiff's disability status, address, and protected legal activity, and were made with intent to embarrass or retaliate.

82.     Such conduct constitutes an actionable invasion of privacy. See *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200 (1998). A reasonable person would find this disclosure highly offensive. See also *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1 (1994), confirming the right to privacy against unwanted public disclosure of personal facts.

83.     The HOA is vicariously liable under the doctrine of *respondeat superior*. See *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202 (1991).

84.     Plaintiff seeks general and special damages, as well as punitive damages based on the willful and malicious nature of the conduct.

### TENTH CAUSE OF ACTION

### (Violation(s) of the Bane Act – Cal. Civ. Code § 52.1)

### Against all Defendants

85.     Plaintiff realleges and incorporates all prior paragraphs.

86.     At all relevant times, Plaintiff lawfully exercised rights secured by both federal and state law, including:

- The right to fair housing and to be free from disability-based harassment (42 U.S.C. § 3604(f); Gov. Code § 12955);
- The right to petition for redress and engage in HOA advocacy and governance reform under both the California Constitution and Davis-Stirling Act;
- The right to file complaints with the California Civil Rights Department (CRD), assist others in doing so, and advocate for nondiscriminatory housing.

87.     Plaintiff realleges and incorporates all prior paragraphs.

88.    Defendants, acting individually and through their positions in the HOA, intentionally interfered with these rights through threats, intimidation, and coercion in violation of Cal. Civ. Code § 52.1.

89.    The specific means of coercion included:

- Public dissemination of Plaintiff's confidential CRD disability complaint, made for the purpose of humiliating and discrediting Plaintiff in front of the HOA community;

- Repeated mocking of Plaintiff's protected disability status, in common areas and public forums, with knowledge of the retaliatory effect;

- Ridicule of Plaintiff's civil rights activity as "a fake ADA lawsuit," made with intent to deter further protected filings;

- Obscene gestures, public shouting, and threats referencing political violence, specifically tied to Plaintiff's identity and advocacy;

- A sustained pattern of conduct designed to delegitimize Plaintiff as a housing rights advocate and impair his credibility with HOA members and residents.

90.    These acts formed a cohesive and escalating campaign, not isolated incidents, designed to strip Plaintiff of both credibility and community safety in his own residence.

91.    Defendants acted not merely with personal animus but with the specific intent to interfere with Plaintiff's exercise of fair housing, anti-discrimination, and governance rights. Under *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 803 (2017), this satisfies the Bane Act's requirement that the interference be not only coercive but purposeful.

92.    Defendants' intent was not merely personal hostility, but a strategic attempt to silence Plaintiff's protected housing advocacy and governance reform efforts. Such

retaliation against Plaintiff's role as a vocal critic and successful HOA reform litigant constitutes interference not only with his civil rights, but with the broader public interest in transparency and accountability in common interest development governance. This includes attempts to sabotage Plaintiff's credibility in civil proceedings, HOA meetings, and housing-related disputes.

93.    Defendants' conduct was not merely abusive but carried out with the express intent to undermine Plaintiff's legal credibility and chill his lawful participation in housing enforcement processes, a textbook form of reputational coercion recognized under *H.S. v. Superior Court*, 43 Cal. App. 5th 1181 (2019).

94.    Defendants' acts were not isolated, but part of an escalating campaign of coercion by means of reputational sabotage, public shaming, and the strategic weaponization of confidential complaints to silence Plaintiff's legally protected housing rights advocacy, all actionable under *Venegas, Cornell, and H.S. v. Superior Court*, 43 Cal. App. 5th 1181 (2019).

95.    As a direct and proximate result of this campaign, Plaintiff suffered:

- Emotional distress and humiliation;
- Reputational damage within his residential community;
- Deterioration of his housing conditions;
- A chilling effect on his ability to advocate for housing rights, both on his own behalf and on behalf of others.

96.    Plaintiff seeks:

- Compensatory damages for emotional and reputational harm;
- Statutory civil penalties pursuant to Cal. Civ. Code § 52(b);
- Punitive damages due to Defendants' willful and malicious conduct;
- Attorneys' fees and costs under Cal. Civ. Code § 52.1(h);
- Injunctive relief restraining further retaliatory or coercive conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against all Defendants, jointly and severally, and award the following relief:

**I. Compensatory and Statutory Damages**

1. General and special damages for emotional distress, humiliation, reputational harm, and loss of enjoyment of life and property;

2. Statutory damages as authorized by:

- California Civil Code §§ 51 and 52 (Unruh Civil Rights Act);
- Government Code § 12989.2 (FEHA);
- California Civil Code § 52.1(b) (Bane Act);

**II. Punitive and Exemplary Damages**

3. Punitive and exemplary damages pursuant to California Civil Code § 3294 and other applicable law, based on Defendants' willful, malicious, and oppressive conduct;

**III. Declaratory and Injunctive Relief**

4. A judicial declaration that Defendants' acts and omissions violated Plaintiff's rights under:

- The Fair Housing Act (42 U.S.C. § 3601 et seq.);
- The California Fair Employment and Housing Act (Gov. Code § 12955 et seq.);
- The Unruh Civil Rights Act (Cal. Civ. Code § 51 et seq.);
- The Bane Act (Cal. Civ. Code § 52.1);

5. A permanent injunction requiring Defendants to:

- Cease all further acts of discrimination, harassment, retaliation, or coercion against Plaintiff;
- Comply fully with federal and state fair housing laws;

VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL

- Adopt, publish, and distribute an anti-discrimination and anti-harassment policy consistent with FEHA regulations;
- Undergo mandatory fair housing and disability rights training, conducted by a CRD-certified trainer, for all HOA board members, managers, and agents;
- Submit to ongoing monitoring and oversight by a court-appointed neutral compliance monitor for a period of not less than five (5) years, with quarterly reporting to the Court;

**IV. Attorneys' Fees and Costs**

6. Reasonable attorneys' fees and costs pursuant to:
- 42 U.S.C. § 3613(c)(2) (Fair Housing Act);
- 42 U.S.C. § 1988 (Civil Rights Attorney's Fees Award Act);
- Gov. Code § 12989.2 (FEHA);
- Cal. Civ. Code § 52(b) (Unruh Act);
- Cal. Civ. Code § 52.1(h) (Bane Act);

**V. Other Relief**

7. Prejudgment interest on all compensable damages as allowed by law;

8. Such other and further relief as the Court deems just, proper, and equitable.

## EXHIBIT H – CASE LAW APPENDIX

1. For the Court's convenience, Plaintiff attaches Exhibit H hereto, a Case Law Appendix identifying the binding and persuasive federal and California authorities cited in support of the causes of action pled herein. Exhibit H is offered as a reference and does not expand or alter the claims asserted.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

1    Dated: April 24, 2025

2                                  RESPECTFULLY SUBMITTED,

3

4

5

6                                  _____

7                                  By: Douglas Kruschen

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL

**VERIFICATION**

I, Douglas Kruschen, am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof.

The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on April 24, 2025, at Agoura, California.


By: DOUGLAS KRUSCHEN

# INDEX OF EXHIBITS

| Exhibit | Description | Referenced In |
|---------|-------------|---------------|
| A | Email from Steven Gittleman dated March 14, 2023, soliciting defamatory online reviews | ¶ 15 |
| B | Cease and desist letter to Victor Rene Martinez dated February 22, 2021 | ¶ 16 |
| C | Cease and desist letter to Steven Gittleman dated February 3, 2023 | ¶ 19 |
| D | Cease and desist letter to Steven Gittleman dated April 6, 2023 | ¶ 19 |
| E | Still image showing large Donald Trump cutout on V. Martinez's property (incident of June 14, 2024) | ¶ 23 |
| F | Still image of V. Martinez using American Sign Language to display obscene gesture (incident of December 7, 2024) | ¶ 24 |
| G | Right-to-Sue notice from the California Civil Rights Department | ¶ 30 |
| H | Case Law Appendix – Supporting Authorities for All Causes of Action | Following Prayer for Relief |

VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND DEMAND FOR
JURY TRIAL

# EXHIBIT A

EXHIBIT A

From: Steve Gittleman <stevegittleman@gmail.com>
To: Steve Gittleman <stevegittleman@gmail.com>
Sent: Tue, Mar 14, 2023 10:56 am
Subject: Let's Help Doug Move!- Write Him A One Star Review!

https://www.yelp.com/biz/ontarget-computer-consulting-agoura-hills-3

Cheers!

# EXHIBIT B

EXHIBIT B

## Beaumont Tashjian
*Turning Common Interests Into Common Ground*

File No.: 3807

February 22, 2021

**NOTICE TO CEASE AND DESIST AND TO COMPLY**
**&**
**NOTICE OF HEARING**

Via U.S. and Certified Mail
(Return Receipt Requested)

**Norberto Martinez**
**Victor Martinez**
28566 Conejo View Dr
Agoura Hills, Ca 91301-3368

**Norberto Martinez**
8033 Gonzaga Avenue
Westchester, CA 90045

**RE:** ***ANNANDALE TOWNHOUSE ASSOCIATION, INC.***
*- Failure to Comply with the Governing Documents*
*- Call to Hearing Notice*

Dear Norberto and Victor Martinez:

As you may know, this office serves as legal counsel to Annandale Townhouse Association, Inc. ("Association"). The matter described herein has been turned over to our firm for resolution. Please direct any and all responses, to my attention, at our Woodland Hills address.

During the Association's open Board meeting of February 16, 2021, which was held via GoTo Meeting Video Conference, I am advised that Victor Martinez was observed engaging in disruptive, disrespectful and obnoxious conduct. Such conduct, such as interrupting other speakers during the meeting repeatedly, was not only wholly inappropriate, but prevented the Board from conducting Association business in an efficient manner. Accordingly, the meeting host was compelled to virtually "mute" Victor on multiple occasions, in order to allow the meeting to proceed as scheduled, and to address pertinent agenda items for the evening.

In response, I am informed that Victor then approached the physical location of the meeting (the Association clubhouse), where several members of the Board were hosting the video conference from their laptops. The Board has advised me that Victor violently and threateningly attempted to gain entry to the clubhouse, such that he ultimately broke the building's door handle. I am further advised that the Sheriff was called to the scene

**Norberto Martinez**
**Victor Martinez**
February 22, 2021
Page 2

and that this was not the first attempt by Victor to gain access to the clubhouse during a private Board meeting.

This conduct may expose Victor to risk of legal action for harassment, pursuant to California *Code of Civil Procedure* Section 527.6:

> "'Harassment' is…a knowing and willful course of conduct directed at a specific person that <u>seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.</u>" (Emphasis added.)

In addition to being disruptive, inappropriate, and threatening, this conduct also constitutes a violation of the Association's Amended and Restated Declaration of Covenants, Conditions and Restrictions ("CC&Rs"). Article VIII, Section 8.4 of the CC&Rs states:

> "<u>No illegal, noxious or offensive activities shall be carried on or conducted upon any Condominium or Common Area nor shall anything be done within the Property which is or would become an unreasonable annoyance or nuisance to other residents.</u>" (Emphasis added.)

Section 8.16 of the CC&Rs further provides, in pertinent part:

> "<u>Nothing shall be done or kept within any Unit, Exclusive Use Common Area, or the Common Area which will increase the rate of insurance on any policy maintained by the Association without the prior written consent of the Association and no Owner shall permit anything to be done or kept within his or her Unit, Exclusive Use Common Area, or the Common Area which would cause any Improvements to be uninsurable against loss by fire or casualty or result in the cancellation of insurance on nay Unit or any part of the Common Area.</u>" (Emphasis added.)

With respect to the broken door handle, also note that Section 8.3 of the CC&Rs states that owners are responsible for any damage to Association Common Areas and Common Area components.

To be clear, the purpose of Board meetings is for the Board to conduct Association business; thus, the Board cannot tolerate these interruptions. Additionally, this threatening conduct is unacceptable, and at a minimum constitutes a nuisance in violation of the CC&Rs. **Demand is hereby made that you immediately and permanently cease and desist from engaging in the above-described behavior**.

The Board will hold a disciplinary hearing in relation to the aforementioned conduct, to consider the imposition of monetary penalties against Norberto Martinez and/or a reimbursement assessment against Norberto Martinez for the broken Common Area door handle and/or suspension of membership privileges. Recall that owners are responsible for the negligence or willful misconduct of their tenants, guests, invitees, etc. (See CC&Rs, §§ 6.10A(1); 8.3.) The hearing is scheduled as follows:

Norberto Martinez                                                            EXHIBIT B
**Victor Martinez**
February 22, 2021
Page 3

       **Date:  March 10, 2021**

       **Time: 6:00 p.m.**

       **Location:**       **GoTo Meet Video Conference**
                      **Phone Number: (224) 501-3412**
                      **Access Code: 220-254-877**

       You are both invited to attend the hearing to address the Board and present any information you may have regarding this matter and your failure to abide by the governing documents. Although your attendance is strongly encouraged, it is not mandatory. Should you choose not to attend, the hearing will be held in your absence and the Board may impose said monetary charge and/or discipline.

       If you are unable to attend the hearing, you have the opportunity to be heard by submitting a written response to the Board, which must be sent to the undersigned and received at least two (2) business days before the hearing. You are requested to advise management, in writing, at least five (5) days prior to the date of the above listed hearing, whether you plan to attend the hearing and whether you will be represented by legal counsel at the same time, so that the Association can plan accordingly.

       I also understand that Victor has objected to, or at least questioned, the Board's decision to include a City Council representative at the February 16th meeting. Note that the Board has the power and duty to exercise its discretion with respect to membership meetings and agenda items. Having relevant speakers at Association meetings is within the Board's purview, as it sees fit, to address pertinent membership concerns, provide insight or expertise into Association or City issues, etc. The Board has acted in the best interests of the Association, in its discretion, and exercised reasonable business judgment with respect to the February 16th meeting and other decisions to include experts, legal counsel, etc., at membership meetings.

       Your failure to comply with the demand set forth herein will also compel the Association to pursue its available legal remedies, including, but not limited to, seeking a court order ordering Victor to comply (i.e., a restraining order) and compensate the Association for its attorneys' fees and costs incurred in gaining your compliance.  Note that Section 15.6A of the CC&Rs provides that, in the event of a breach or violation of the governing documents by an owner or the owner's tenants, the Board may utilize every availably remedy in law or in equity to enforce the obligations therein.

       The Association, through its Board of Directors, has a duty to operate and manage the community's affairs. Further, the Board has an obligation to maintain the safety of its residents and to preserve property values within the community, and it takes this duty seriously. This duty includes enforcing the governing documents. The Board has enforced the governing documents in a fair, reasonable and non-arbitrary manner in order to protect the value and desirability of the Association's properties, and the safety of all residents within the Association. You are not being singled out or discriminated against. Instead, you have been notified of persistent violations of the Association's CC&Rs.

**Norberto Martinez**
**Victor Martinez**
February 22, 2021
Page 4

Thank you for your prompt attention to this matter.

Very truly yours,

**BEAUMONT TASHJIAN**

AJ:sk                                    A.J. JAHANIAN, ESQ.
cc: Board of Directors (via email only)

# EXHIBIT C

EXHIBIT C



February 3, 2023

File No.: 3807

## NOTICE TO CEASE AND DESIST AND TO COMPLY

<u>Via U.S. Mail & Certified</u>
<u>(Return, Receipt Requested)</u>

**Steve Gittleman**
28555 Conejo View Drive
Agoura Hills, CA 91301

      RE:    *ANNANDALE TOWNHOUSE ASSOCIATION, INC.*
                *-Breach of Fiduciary Duty*
                *-Failure to Comply with the Governing Documents*

Dear Mr. Gittleman:

As you know, this firm serves as general legal counsel to Annandale Townhouse Association, Inc. ("Association"). Please direct any and all correspondence, to my attention, at our Woodland Hills address.

I have been informed that you have engaged in conduct that is, at best, inappropriate and runs contrary to your fiduciary obligations as a member of the Board of Directors. Moreover, this pattern of behavior exposes you to liability for defamation, pursuant to California law.

Specifically, since taking your seat on the Board following the 2022 election, you have failed or refused to attend regular meetings, communicate with your fellow directors regularly, and otherwise meet your basic fiduciary duties of care and loyalty. This includes unilaterally reaching out to legal counsel for direction on records and past Board member communications, with no clear legitimate purpose for these requests. You have also disseminated mass communications to the membership via email, which have not otherwise been sanctioned by the Board, and which accuse the Association of holding "year-after-year of fraudulent elections."

What is more, I understand that you have verbally made antisemitic and anti-Muslim slurs while in the presence of other directors.

Contacting vendors and/or the membership unilaterally not only comes at a cost to the Association, but exposes you to personal liability when said communications are not approved by the Board. Additionally, rogue behavior <u>severely undermines your credibility as a Board member and the Board as a whole, and increases liability and unbudgeted expenses for the Association</u>. I understand that the Board has also attempted to work with you to schedule a new Board member "training" with legal counsel, to discuss Board member responsibilities, duties, and the like, but you have refused.

Steve Gittleman
February 3, 2023
Page 2

Corporations Code Section 7210 requires an association's affairs to "be exercised by or <u>under the direction of the board</u>." (Emphasis added.) In other words, the Board has <u>one legal voice, and must act as a whole</u>. By unilaterally contacting or directing vendors and the membership, you have undermined the Board's authority and disobeyed their directive, which demonstrates a breach of your fiduciary duties to the Association and to the Board.

As an individual director, you owe a fiduciary duty to the Association to act in good faith, in the best interests of the Association, and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances. (Corporations Code § 7231.) Additionally, Corporations Code Section 7231.5 provides that board members are protected from liability as long as their action(s) satisfied the following criteria: (1) it was performed in good faith; (2) it was performed in a manner such director believed to be in the best interests of the association; (3) it was performed with such care and reasonable inquiry as an ordinarily prudent person in a like position would use under similar circumstances.

While you are in breach of your fiduciary obligations, you have also exposed yourself to liability for defamation, by accusing the Association, i.e., the Board, of engaging in "fraudulent" behavior. Civil Code Section 45 provides:

> "<u>Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation</u>." (Emphasis added.)

At a minimum, this conduct is tantamount to a nuisance under the CC&Rs. Section 15.2 states:

> "Without limiting the generality of the foregoing section, the result of every act or omission whereby any covenant contained in this Declaration is violated in whole or in part is hereby declared to be a nuisance, and every remedy against nuisance, either public or private, shall be applicable against every such act or omission."

Finally, the use of xenophobic or racial slurs/profanity, undermine directors' and other vendors' ability to perform their duties and work in a <u>hostile-free environment.</u> These actions create a toxic and unhealthy environment and expose the Association and Board to significant liability claims. California law requires employees to be provided a hostile-free workplace. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4[th] 264.) Your actions are extremely concerning to the Board. The Association, and Board members, stand exposed to liability claims by Association staff, and their respective employers, arising from your actions.

The federal Fair Housing Act requires associations to take prompt steps to address, investigate, and end claims of discriminatory harassment based on race, color, religion, national origin, sex, familial status, and disability. This includes harassment by owners, residents, guests, board members, managers, or vendors. An association will be liable if it knows or should have known about the conduct and fails to take reasonable steps within its authority to correct and end the discriminatory conduct.

Steve Gittleman
February 3, 2023
Page 3

24 CFR Section 100.7(a)(1) *et seq.* provides:

"A person is directly liable for:

(i) The person's own conduct that results in a discriminatory housing practice.

(ii) Failing to take prompt action to correct and end a discriminatory housing practice by that person's employee or agent, where the person knew or should have known of the discriminatory conduct.

(iii) **Failing to take prompt action to correct and end a discriminatory housing practice by a third party, where the person knew or should have known of the discriminatory conduct and had the power to correct it. The power to take prompt action to correct and end a discriminatory housing practice by a third-party depends upon the extent of the person's control or any other legal responsibility the person may have with respect to the conduct of such third-party."** (Emphasis added.)

For purposes of the Association, 24 CFR Section 100.600 (a)(2) defines "hostile environment harassment", as "unwelcome conduct that is sufficiently severe or pervasive as to interfere with the . . . use or enjoyment of a dwelling." Thus, the obligation to take action to end violating conduct extends to homeowners associations.

Based on the forgoing, demand is hereby made that you ***immediately and permanently cease and desist*** from engaging in unauthorized actions, violating the Association's governing documents, making xenophobic or other ethnic/racial slurs or comments, and engaging in rogue or other conduct which amounts to a breach of fiduciary duties to the Association.

You are not being singled out nor discriminated against. Instead, you are given notice of your breach of fiduciary obligations and violations of the governing documents. The Board cannot tolerate your failure to comply. Accordingly, should you fail to comply with the demands set forth, the Board may take the following actions against you:

- Censure,
- Removal from committees (if applicable);
- Request for your resignation from the Board;
- Recall by the membership; and
- Legal proceedings

*Nothing contained herein or omitted from this letter shall be deemed a waiver of any legal rights or remedies, and the Association expressly reserves all of its rights and remedies.*

EXHIBIT C

**Steve Gittleman**
February 3, 2023
Page 4

    Thank you.

Very truly yours,

**BEAUMONT TASHJIAN**

A.J. JAHANIAN, ESQ.

AJ:sk
cc: Board of Directors

# EXHIBIT D

EXHIBIT D



File No.: 3807

April 6, 2023

## <u>FINAL</u> NOTICE TO CEASE AND DESIST AND TO COMPLY

<u>Via U.S. Mail & Certified Mail (RRR)</u>

**Steve Gittleman**
28555 Conejo View Drive
Agoura Hills, CA 91301

RE:     *<u>ANNANDALE TOWNHOUSE ASSOCIATION, INC.</u>*
           *-Breach of Fiduciary Duties*

Dear Mr. Gittleman:

This letter follows our letter to you dated March 15, 2023, regarding your ongoing fiduciary duties as a member of the Annandale Townhouse Association, Inc. ("Association") Board of Directors. I have been informed, unfortunately, that you continue to engage in conduct which exposes you and the Association to unreasonable risk of liability.

Specifically, I have been advised that on March 20, 2023, you emailed the members of the Association a spreadsheet, which contained a spreadsheet of checks sent by the Association to Conejo Valley Construction over the past 27 months. Sending out Association records to the membership through a mass email risks dissemination of confidential information to the public. Furthermore, sending out Association records through a mass email violates Civil Code Section 5205(h), which states:

> "Requesting parties shall have the option of receiving specifically identified records by electronic transmission or machine-readable storage media as long as those records can be transmitted in a redacted format that does not allow the records to be altered. The cost of duplication shall be limited to the direct cost of producing the copy of a record in that electronic format. <u>The association may deliver specifically identified records by electronic transmission or machine-readable storage media</u> **as long as those records can be transmitted in a redacted format that prevents the records from being altered.**" (Emphasis added.)

By sending Association records out through mass email without the approval of the Board, you jeopardize the integrity of the records by putting them at risk of being altered by Association members or even the public. You also continue to undermine your credibility, and the credibility of the Board as a whole, thereby creating significant risk of legal liability. Your email implies mismanagement by the Board at best; at worst, your various mass communications create the impression of financial misconduct by the Board, given that these communications are often without context and clearly intended to disrupt the Board's ability to conduct business and cause strife and concern amongst the membership.

Steve Gittleman
April 6, 2023
Page 2

Moreover, the spreadsheet you distributed to the community is not an "association record", as defined by California Civil Code Sections 5200 *et seq.* I am also informed that you made no effort to distribute this spreadsheet to members only (i.e., residents/tenants also may have received it). As a member of the Board, you should be aware that only <u>members</u> are entitled to receive records, strictly defined as an "association record" or "enhanced association record", under Civil Code Sections 5200 et seq.

You also distributed an email to the community on April 6, 2023, disclosing extremely sensitive and confidential information to the community. Specifically, you forwarded an email chain between the Association, an owner's realtor, and legal counsel, which involves discussions pertaining to a prospective resident's reasonable accommodation request. Not only did this disclosure violate your fiduciary obligations as outlined above, it violated a prospective resident's right to privacy regarding his disability-related medical information, which was solely intended to be viewed by Board members.

Furthermore, you have communicated falsehoods to the community regarding the ongoing building foundation repairs and investigations being performed by Conejo Valley Construction. This includes inflammatory and misinformed remarks regarding the project as a whole, "They are burning up our cash for some unknown reason." You have also stated to the membership that the patio work being performed by Conejo Valley Construction is the responsibility of the owners; however, in discussing this with the Board and management, you would have learned that this part of the project related to the footings under the patios, which are structural and part of the Association's foundation repair responsibilities.

As such, the above rogue behavior ***severely undermines your credibility as a Board member and the Board as a whole and increases liability and unbudgeted expenses for the Association***. Again, Corporations Code Section 7210 requires an association's affairs to "be exercised by or <u>under the direction of the board</u>." (Emphasis added.) In other words, the Board has ***one legal voice, and must act as a whole***.

As a member of the Board, your fiduciary duties of loyalty, confidentiality and due care require heightened professionalism and scrutiny regarding your use of Association records, especially those that are confidential and/or not subject to inspection by the Association's membership or non-title residents. **<u>Your dissemination of the spreadsheet and confidential emails puts you in breach of your fiduciary duties of loyalty, confidentiality, and due care to the Association and its membership. Accordingly, final demand is hereby made that you immediately and permanently cease and desist from engaging in the foregoing conduct.</u>**

Furthermore, you continue to disseminate various emails to the community and the directors, making sweeping accusations of, and allusions to, embezzlement by the Board, after being ordered to permanently cease and desist from this conduct in the March 15, 2023, letter our office sent to you. Continuing to make baseless allegations solely to harass and intimidate the Board not only creates discord in the community and personal liability for yourself, but risks adversely impacting property values by signaling to prospective residents, investors and lenders, that the community is fraught with dysfunction. **<u>Demand is again reiterated that you immediately and permanently cease and desist from engaging in this conduct.</u>**

EXHIBIT D

**Steve Gittleman**
April 6, 2023
Page 3

The Board continues to seek your participation, *in tandem* with your fellow directors. The Board's goal is to preserve the harmony, value and desirability of the Association and its properties.

*Nothing contained herein or omitted from this letter shall be deemed a waiver of any legal rights or remedies, and the Association expressly reserves all of its rights and remedies.*

Your immediate attention is required.

Very truly yours,

**BEAUMONT TASHJIAN**

A.J. JAHANIAN, ESQ.

AJ:km:sk:ok
cc: Board of Directors

# EXHIBIT E

EXHIBIT E



# EXHIBIT F

EXHIBIT F



# EXHIBIT G

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**
EXHIBIT G

KEVIN KISH, DIRECTOR

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

September 6, 2024

**Via Email:** 

Dou  las Kruschen

RE:  **Notice of Case Closure and Right to Sue**
 **Case Number**: 202305-20719918
 **Case Name**: Kruschen / Annandale Townhouse Assn. Inc. et al.
 **EEOC Number**: 37A-2023-03017
 **County of Violation**: San Bernardino

Dear Douglas Kruschen:

The Civil Rights Department (CRD) has closed your case for the following reason: **Insufficient Evidence**. The CRD makes no determination about whether further investigation would establish violations of the Fair Employment and Housing Act (FEHA) or other laws. This decision does not mean the alleged claims have no merit or that the respondent is in compliance with the law. No finding is made as to any other issues that might be construed as having been raised by this complaint.

**This is your Right to Sue notice.** As specified in Government Code section 12965, subdivision (b), you may file your own civil action asserting employment claims under the FEHA within one year of the date of this letter. If you want to file a civil action that includes other claims, you should consult an attorney about the applicable statutes of limitation. The intake form for this case was submitted to CRD on May 9, 2023.

Your complaint **is dual filed** with the United States Equal Employment Opportunity Commission (EEOC). You have a right to request EEOC to perform a substantial weight review of our findings. This request must be made within fifteen (15) days of your receipt of this notice. Pursuant to Government code section 12965, subdivision (d) (1), your right to sue may be tolled during the pendency of EEOC's review of your complaint. To secure this review, you must request it in writing to the State and Local Coordinator:

**EEOC Southern California**
**Roybal Federal Building**
**255 East Temple Street, 4th Floor**
**Los Angeles, California 90012**
**Karrie.Maeda@eeoc.gov**

You have the right to appeal the decision to close your case. This request must be made within ten (10) days of receiving this letter. Your appeal must include: 1) a summary as to why you dis-agree with the case closure; and/or 2) any new detailed information (e.g., documents, records, witness information) that supports your claim. If you appeal, the information you provide will be carefully considered. You may appeal this decision by:

- Email. Send your request to appeals@calcivilrights.ca.gov and make reference to the case #: 202305-20719918.

- Mail. Send your request to: CRD, Appeals Unit, 651 Bannon Street, Suite 200, Sacramento, CA 95811. Include a copy of this letter and make reference to the case #: 202305-20719918.

- Phone. Call us at 1-800-884-1684 (voice), 1-800-700-2320 (TTY), or by using California's Relay Service at 711.

Although the CRD has closed this case, the allegations and conduct at issue may be in violation of the law.  You should consult an attorney as soon as possible regarding any other options and/or recourse you may have regarding the underlying acts or conduct.

Below are some resources to assist you in deciding whether to bring a civil action on your own behalf in court in the State of California under the provisions of the FEHA against the person, employer, labor organization or employment agency named in your complaint. To proceed in Superior Court, you should contact an attorney.

- The State Bar of California has a Lawyer Referral Services Program which can be accessed through its website at www.calbar.ca.gov under the "Public" link, or by calling 866-442-2529 (within California) or 415-538-2250 (outside California).

- Your local city or county may also have a lawyer referral or legal aid service.

- The Department of Consumer Affairs (DCA) has a publication titled "The Small Claims Court: A Guide to Its Practical Use" online at www.dca.ca.gov/publications/small_claims. You may also order a free copy by calling the DCA Publication Hotline at 866-320-8652, or by writing to them at: DCA, Office of Publications, Design and Editing, 1625 North Market Blvd., Suite N-112, Sacramento, CA 95834.

Sincerely,

*Stephanie Centeno*

Stephanie Centeno
Associate Governmental Program Analyst
559-337-5272
stephanie.centeno@calcivilrights.ca.gov

Cc:  Annandale Townhouse Assn. Inc.
c/o Lonnie Giamela
Via Email: lgiamela@fisherphillips.com

c/o Xiaochen Chen
Via Email: xchen@fisherphillips.com

**Notice of Case Closure and Right to Sue**
**September 6, 2024**
**Page 3** of **3**

Victor Martinez



# EXHIBIT H

## EXHIBIT H – CASE LAW APPENDIX

This appendix identifies the binding and persuasive federal and California authorities cited in support of the causes of action pled in this Verified Complaint. It is provided for the Court's convenience and does not expand or alter the claims asserted.

### I. Federal Fair Housing Act and Civil Rights Cases

- Morris v. W. Hayden Estates, 104 F.4th 1128 (9th Cir. 2024)
  *Hostile housing environment claims under FHA § 3617.*

- Bloch v. Frischholz, 533 F.3d 562 (7th Cir. 2008)
  *Discriminatory interference with use and enjoyment of housing.*

- Weinreb v. City of Glendale, 590 F. App'x 663 (9th Cir. 2015) (Unpublished)
  *Failure to act on harassment supports FHA liability.*

- Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690 (9th Cir. 2009)
  *Municipal indifference to discrimination actionable under FHA.*

- Walker v. City of Lakewood, 272 F.3d 1114 (9th Cir. 2001)
  *Ongoing inaction can demonstrate deliberate indifference.*

- Sanchez v. City of Fresno, 914 F. Supp. 2d 1079 (E.D. Cal. 2012)
  *Retaliatory harassment by housing officials held actionable.*

- DiCenso v. Cisneros, 96 F.3d 1004 (7th Cir. 1996)
  *FHA liability can arise from failure to stop tenant-on-tenant harassment.*

- Fowler v. Wells Fargo Bank, 2021 WL 633868 (C.D. Cal. Feb. 17, 2021)
  *Disclosure of private medical information supported FHA retaliation claim.*

- Howard v. HMK Holdings, LLC, 988 F.3d 1185 (9th Cir. 2021)
  *Clarifies duty to accommodate under FHA.*

- Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, 576 U.S. 519 (2015)
  *Disparate impact and systemic policy failures actionable under FHA.*

### II. California Fair Housing and Anti-Discrimination Law

- Brown v. Smith, 55 Cal. App. 5th 303 (2020)
  *Harassment independently actionable under FEHA.*

- Auburn Woods I Homeowners Ass'n v. FEHC, 121 Cal. App. 4th 1578 (2004)
  *HOA liable for failing to accommodate resident disability.*

- Flatley v. Mauro, 39 Cal. 4th 299 (2006)
  *Illegal conduct not protected by Anti-SLAPP statute.*

- City of Montebello v. Vasquez, 1 Cal. 5th 409 (2016)
  *Anti-SLAPP statute does not protect discriminatory conduct.*

- Frances T. v. Village Green Owners Ass'n, 42 Cal. 3d 490 (1986)
  *HOAs have duty to protect residents from foreseeable harm.*

- Lamden v. La Jolla Shores Clubdominium HOA, 21 Cal. 4th 249 (1999)
  *Establishes fiduciary duties of HOA boards under California law.*

- Koebke v. Bernardo Heights Country Club, 36 Cal. 4th 824 (2005)
  *Unruh Act applies to quasi-public community housing settings.*

- Warfield v. Peninsula Golf & Country Club, 10 Cal. 4th 594 (1995)
  *Private clubs may be subject to anti-discrimination laws.*

- Wilkins-Jones v. County of Alameda, 859 F. Supp. 2d 1039 (N.D. Cal. 2012)
  *Disability-based exclusion violates Unruh Act.*

- McDonald v. Antelope Valley Comm. Coll. Dist., 45 Cal. 4th 88 (2008)
  *FEHA administrative tolling rules clarified.*

## III. Privacy & Tort Law

- Shulman v. Group W Prods., Inc., 18 Cal. 4th 200 (1998)
  *Disclosure of private facts is actionable under California privacy law.*

- Hill v. Nat'l Collegiate Athletic Assn., 7 Cal. 4th 1 (1994)
  *California Constitution protects individual informational privacy.*

- Mary M. v. City of Los Angeles, 54 Cal. 3d 202 (1991)
  *Employers may be liable under respondeat superior for privacy violations.*